**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LAKESOUTH HOLDINGS, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 3:16-cv-1024** |
| | § | |
| **KOHL'S DEPARTMENT STORES,** | § | |
| **INC. et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

**KOHL'S' FIRST AMENDED ANSWER TO LAKESOUTH'S**
**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Defendants Kohl's Department Stores, Inc. and Kohl's Illinois, Inc. (collectively, "Kohl's"), by and through their undersigned counsel, hereby answer the First Amended Complaint for Patent Infringement (the "Complaint") of Plaintiff LakeSouth Holdings, LLC ("LakeSouth") as follows:

## NATURE OF THE SUIT

**COMPLAINT ¶ 1:**  This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

**ANSWER:**   Kohl's admits that LakeSouth purports to state a claim for patent infringement. Kohl's denies that LakeSouth is entitled to any relief**.**

## THE PARTIES

**COMPLAINT ¶ 2:**  Plaintiff LakeSouth Holdings, LLC ("Plaintiff" or "LakeSouth") is a Delaware limited liability company with its principal place of business located at P.O. Box 93883,

Southlake, Texas 76092, which is in the Northern District of Texas.

**ANSWER:**  Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 2 of the Complaint and therefore denies them.

**COMPLAINT ¶ 3:**  Defendant Kohl's Department Stores, Inc. ("Kohl's Department Stores") is a Delaware corporation with its principal place of business at N56 W 17000 Ridgewood Drive, Menomonee Falls, Wisconsin 53051.  Kohl's Department Stores is registered to do business in Texas and may be served via its registered agent, Corporate Creations Network Inc., 4650 W. Spencer St., Appleton, WI 54914. Among Kohl's Department Stores' business activities includes managing marketing and e-commerce operations for "Kohl's"-branded stores and websites. Kohl's Department Stores is the corporate parent of Kohl's Illinois, Inc.

**ANSWER:**  Kohl's admits that Kohl's Department Stores, Inc. is a Delaware corporation with its principal place of business at the above-provided address, that Kohl's Department Stores, Inc. is registered to do business in the State of Texas, and that Kohl's Department Stores, Inc. has been served in this case.

**COMPLAINT ¶ 4:**  Defendant Kohl's Illinois, Inc. ("Kohl's Illinois") is a Nevada corporation with its principal place of business at 4340 Fox Valley Center Drive, Aurora, Illinois 60504. Kohl's Illinois is registered to do business in Texas and may be served via its registered agent, Corporate Creations Network, Inc., 4265 San Felipe, #1100, Houston, TX 77027. Kohl's Illinois is a wholly-owned subsidiary of Kohl's Department Stores, Inc.

**ANSWER:**  Kohl's admits that Kohl's Illinois, Inc. is a Nevada corporation and that it is registered to do business in the State of Texas. Kohl's denies that Kohl's Illinois, Inc.'s principal place of business is at the above-provided address. Kohl's admits that Corporate Creations Network, Inc. serves as a registered agent for Kohl's Illinois, Inc. but denies that Kohl's Illinois,

2

Inc. may be served at the above-provided address.  Kohl's admits that Kohl's Illinois, Inc. has been served in this case.

**COMPLAINT ¶ 5:**  Unless otherwise noted, Defendants KDS and KI are hereinafter collectively referred to as the "Kohl's Defendants" or "Kohl's" in this complaint.

**ANSWER:** The allegations of Paragraph 5 require no response from Kohl's.

**COMPLAINT ¶ 6:**  Defendant Home Depot U.S.A., Inc. ("Home Depot") is a Delaware corporation with its principal place of business at 2455 Paces Ferry Road SE, Atlanta, Georgia 30339-4024. Home Depot is registered to do business in Texas and may be served via its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 6 of the Complaint and therefore denies them.

**COMPLAINT ¶ 7:**  Unless otherwise noted, the Kohl's Defendants and Home Depot are hereinafter collectively referred to as "Defendants" and each individually as a "Defendant."

**ANSWER:** The allegations of Paragraph 7 require no response from Kohl's.

### JURISDICTION AND VENUE

**COMPLAINT ¶ 8:** This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq.*  This Court's jurisdiction over this action is proper under the above statutes, including 35 U.S.C. § 271, *et seq.*, 28 U.S.C. § 1331 (federal question jurisdiction), and § 1338 (jurisdiction over patent actions).

**ANSWER:**  In response to the allegations of Paragraph 8 of the Complaint, Kohl's admits that this purports to be a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 101, *et seq.* and § 271. Kohl's denies that it has infringed LakeSouth's

alleged rights in United States Patent No. 6,612,713 or United States Patent No. 8,794,781; Kohl's further denies that either patent is valid; and Kohl's further denies that LakeSouth is entitled to monetary damages or any other relief it seeks against Kohl's. Kohl's does not contest subject matter jurisdiction in this case.

**COMPLAINT ¶ 9:** Upon information and belief, Kohl's, directly and/or through subsidiaries, agents, representatives, or intermediaries, has transacted business in this District and has committed and continues to commit and/or induce acts of patent infringement in this District. Thus, venue is proper in this district as to Kohl's under 28 U.S.C. §§ 1391(c) and 1400(b).

**ANSWER:** Kohl's admits that it operates stores in this District.  Kohl's specifically denies that it has induced or contributed to any act of infringement and further denies the remaining allegations of Paragraph 9.

**COMPLAINT ¶ 10:**  Upon information and belief, Home Depot, directly and/or through subsidiaries or intermediaries, has transacted business in this district and has committed and continues to commit and/or induce acts of patent infringement in this District. Thus, venue is proper in this district as to Home Depot under 28 U.S.C. §§ 1391(c) and 1400(b).

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 10 of the Complaint and therefore denies them.

**COMPLAINT ¶ 11:** Upon information and belief, Kohl's has conducted and does conduct substantial business in this forum, directly and/or through subsidiaries, agents, representatives, or intermediaries, such substantial business including but not limited to: (i) at least a portion of the infringements alleged herein; (ii) purposefully and voluntarily placing one or more infringing products into the stream of commerce with the expectation that they will be purchased by consumers in this forum; or (iii) regularly doing or soliciting business, engaging in other persistent

courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this judicial district. Thus, Kohl's is subject to this Court's specific and general personal jurisdiction pursuant to due process and the Texas Long Arm Statute.  Venue is proper in the Northern District of Texas as to Kohl's pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b).

**ANSWER:**  Kohl's admits that it operates stores in this District.  Kohl's is not contesting venue in this matter.

**COMPLAINT ¶ 12:**  Upon information and belief, Home Depot has conducted and does conduct substantial business in this forum, directly and/or through subsidiaries or intermediaries, such substantial business including but not limited to: (i) at least a portion of the infringements alleged herein; (ii) purposefully and voluntarily placing one or more infringing products into the stream of commerce with the expectation that they will be purchased by consumers in this forum; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this judicial district. Thus, Home Depot is subject to this Court's specific and general personal jurisdiction pursuant to due process and the Texas Long Arm Statute. Venue is proper in the Northern District of Texas as to Home Depot pursuant to 28 U.S.C. §1391 and 28 U.S.C. § 1400(b).

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 12 of the Complaint and therefore denies them.

**COMPLAINT ¶ 13:** Joinder of Kohl's and Home Depot in his action is appropriate under 35 U.S.C. § 299(a). As a non-limiting example, upon information and belief, at least one of the Accused Kohl's Umbrellas (e.g., "Sonoma Goods for Life Cantilever LED Solar Umbrella") and at least one of the Accused Home Depot Umbrellas (e.g., "Hampton Bay E/O 11 ft. Solar

Umbrella" (Item #948-958, Model #UXS01601C) are supplied to Kohl's and Home Depot by Yotrio Corporation and are identical or substantially identical with respect to the features and functions relevant to this Action.

**ANSWER:** Kohl's denies that joinder is appropriate in this action. Kohl's lacks sufficient information to either admit or deny the remaining allegations contained in Paragraph 13 and therefore denies them.

### THE PATENTS AT ISSUE

**COMPLAINT ¶ 14:** Mr. Gregory G. Kuelbs is a Texas resident and a prolific inventor. Mr. Kuelbs is a named inventor on more than 40 patents. Mr. Kuelbs lives in Westlake, Texas, which is in the Northern District of Texas.

**ANSWER:** Kohl's lacks sufficient information to either admit or deny the allegations contained in Paragraph 14 and therefore denies them.

**COMPLAINT ¶ 15:** This cause of action asserts infringement of United States Patent No. 6,612,713 ("the '713 Patent") and United States Patent No. 8,794,781 ("the '781 Patent") (collectively, "the Asserted Patents").

**ANSWER:** Kohl's admits that LakeSouth purports to state claims for infringement of the referenced patents, but Kohl's denies such claims and further denies that LakeSouth is entitled to any relief.

**COMPLAINT ¶ 16:** The '781 Patent, entitled "Umbrella Apparatus," duly and legally issued on August 5, 2014, from U.S. Patent Application No. 10/650,537, filed on August 28, 2003, naming as inventor Mr. Kuelbs. A true and correct copy of the '781 Patent is attached hereto as Exhibit A and is incorporated by reference.

**ANSWER:** Kohl's admits that the '781 Patent is entitled "Umbrella Apparatus," bears an

issue date of August 5, 2014, from U.S. Patent Application No. 10/650,537, filed on August 28, 2003, that it names as inventor Mr. Kuelbs, and that a copy of the patent appears to be attached to the Complaint. Kohl's denies that the '781 patent was duly and legally issued and denies the remainder of Paragraph 16.

**COMPLAINT ¶ 17:**  The '713 Patent, entitled "Umbrella Apparatus," duly and legally issued on September 2, 2003, from U.S. Application No. 10/068,424, filed on February 7, 2002, naming as inventor Mr. Kuelbs. After an *inter partes* reexamination proceeding, the U.S. Patent and Trademark Office issued a reexamination certificate on September 23, 2013. A true and correct copy of the '713 Patent is attached hereto as Exhibit B and is incorporated by reference.  A true and correct copy of the reexamination certificate is attached as Exhibit C and is incorporated by reference.

**ANSWER:**  Kohl's admits that the '713 Patent is entitled "Umbrella Apparatus," bears an issue date of September 2, 2003, from U.S. Patent Application No. 10/068,425, filed on February 7, 2002, that it names as inventor Mr. Kuelbs, and that a copy of the patent appears to be attached to the Complaint. Kohl's admits that a copy of the '713 reexamination certificate appears to be attached to the Complaint and that the certificate bears an issue date of September 23, 2013. Kohl's denies that the '713 patent was duly and legally issued and denies the remainder of Paragraph 17.

**COMPLAINT ¶ 18:**  Kohl's has not obtained a license to the Asserted Patents.

**ANSWER:**  Kohl's admits that it has not itself entered into a license for the Asserted Patents and further asserts that no such license is necessary. Kohl's may be entitled to the benefit of other licenses entered into by LakeSouth.

**COMPLAINT ¶ 19:**  Kohl's does not have LakeSouth's permission to make, use, sell, offer to sell, or import products that are covered by one or more claims of the Asserted Patents.

**ANSWER:**  Kohl's admits that it has not received direct permission from LakeSouth to make, use, sell, offer to sell, or import any product, and Kohl's further states that it is not aware of any reason that it would need permission from LakeSouth to make, use, sell, offer to sell, or import products. Kohl's may be entitled to the benefit of other licenses entered into by LakeSouth. Kohl's denies the remaining allegations in Paragraph 19.

**COMPLAINT ¶ 20:**  Home Depot has not obtained a license to the Asserted Patents as to the Accused Home Depot Umbrellas.

**ANSWER:**  Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 20 of the Complaint and therefore denies them.

**COMPLAINT ¶ 21:**  Home Depot does not have LakeSouth's permission to make, use, sell, offer to sell, or import the Accused Home Depot Umbrellas, which are covered by one or more claims of the Asserted Patents.

**ANSWER:**  Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 21 of the Complaint and therefore denies them.

**COMPLAINT ¶ 22:**  Multiple companies, in and outside the context of litigation, have obtained patent licenses to the '713 Patent and '781 Patent. The licensees have supplied and/or are supplying solar-powered outdoor and patio umbrellas, licensed under the Asserted Patents, to major retailers such as Target.com, Wal-Mart, Sears, Bed Bath & Beyond, Lowe's, and Tuesday Morning. One of LakeSouth's licensees, Zhejiang Nengfu Tourist Products Co., Ltd. ("Zhejiang Nengfu"), supplies certain solar-powered market umbrellas, which are licensed and not accused of infringement in this Action, to Home Depot. Nevertheless, Home Depot continues to sell and offer for sale various infringing solar-powered offset umbrellas that it has obtained from unlicensed suppliers such as Yotrio Corporation.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 22 of the Complaint and therefore denies them.

**COMPLAINT ¶ 23:** Kohl's needs to obtain a license to the Asserted Patents and cease its ongoing infringement of LakeSouth's patent rights.

**ANSWER:** Kohl's denies the allegations contained in Paragraph 23 and specifically denies any allegation that it has infringed or is infringing any valid claims of the Asserted Patents.

**COMPLAINT ¶ 24:** Home Depot needs to obtain a license to the Asserted Patents as to the Accused Home Depot Umbrellas and cease its ongoing infringement of LakeSouth's patent rights.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 24 of the Complaint and therefore denies them.

**COMPLAINT ¶ 25:** The '713 Patent has been recently litigated in the Northern District of Texas. On August 10, 2015 in the *LakeSouth Holdings, LLC v. Ace Evert, Inc., et al*., No. 3:14-cv-1348 (N.D. Texas) case, the Court issued a claim construction order construing various claims terms of the '713 Patent. A true and correct copy of the claim construction order (Dkt No. 95) is attached hereto as Exhibit D.

**ANSWER:** Kohl's admits that attached to the Complaint appears to be a claim construction order for the *LakeSouth Holdings, LLC v. Ace Evert, Inc., et al*., No. 3:14-cv-1348 (N.D. Texas) matter. Kohl's does not have sufficient information to admit or deny the remaining allegations contained in Paragraph 25 of the Complaint and therefore denies them.

**COMPLAINT ¶ 26:** Plaintiff LakeSouth is the owner and assignee of all rights, title, and interest in and under the '713 Patent and '781 Patent.

**ANSWER:** Kohl's lacks sufficient information to either admit or deny the allegations

contained in Paragraph 26 of the Complaint and therefore denies them.

**COMPLAINT ¶ 27:**  LakeSouth has standing to sue for infringement of the '713 Patent and the '781 Patent.

**ANSWER:**  Kohl's lacks sufficient information to either admit or deny the allegations contained in Paragraph 27 of the Complaint and therefore denies them.

**COMPLAINT ¶ 28:**  On information and belief, to the extent any marking was required by 35 U.S.C. § 287, LakeSouth and all predecessors in interest to the '713 Patent and '781 Patent complied with any such requirements.

**ANSWER:**  Kohl's lacks sufficient information to either admit or deny the allegations contained in Paragraph 28 of the Complaint and therefore denies them.

## GENERAL ALLEGATIONS

### Kohl's

**COMPLAINT ¶ 29:**  Upon information and belief, Kohl's purchases various patio and outdoor solar-powered umbrellas that it uses, offers to sell, sells, distributes, and/or imports in the United States. Among these solar-powered umbrellas are umbrellas marketed under the "Sonoma" brand name. "Sonoma" is a Kohl's brand.

**ANSWER:**  Kohl's admits that one of its brands is "Sonoma Goods for Life," and that it sells patio furniture to the public, sometimes including an umbrella.  Kohl's denies the remaining allegations contained in Paragraph 29.

**COMPLAINT ¶ 30:**  Kohl's uses, has used, offers to sell, has offered to sell, sells, has sold, imports, and/or has imported solar-powered umbrellas that include lights and a solar panel. These umbrellas infringe one or more claims of the Asserted Patents and include without limitation the "Sonoma Goods for Life Cantilever LED Solar Umbrella," "Sonoma Outdoors Crank & Tilt

Solar LED Patio Umbrella," and any and all, current and prior, reasonably similar solar-powered umbrellas having the same or equivalent functions and features to the extent relevant to the claims of the Asserted Patents ("the Accused Kohl's Umbrellas"). Upon information and belief, Kohl's obtains some or perhaps all of the Accused Kohl's Umbrellas from Yotrio Corporation, which has not licensed the Asserted Patents and which also supplies some or all of the Accused Home Depot Umbrellas to Home Depot.

**ANSWER:**  Kohl's admits that it sells patio furniture, sometimes including umbrellas, including "Sonoma Goods for Life Cantilever LED Solar Umbrella."  Kohl's denies that it currently sells the product "Sonoma Outdoors Crank & Tilt Solar LED Patio Umbrella," though Kohl's admits that it has sold such a product in the past.  Regarding the third sentence of Paragraph 30, Kohl's admits that Yotrio Corporation supplies certain umbrella products to Kohl's, but Kohl's denies that Yotrio Corporation supplies all of the "Accused Kohl's Umbrellas."  Kohl's lacks knowledge sufficient to either admit or deny the remaining allegations in the third sentence of Paragraph 30 and therefore denies them. Kohl's denies that it infringes the Asserted Patents and denies the remaining allegations contained in Paragraph 30.

**COMPLAINT ¶ 31:**  The Accused Kohl's Umbrellas are and have been sold, offered for sale, and/or marketed by Kohl's through its website at www.kohls.com, the Kohl's mobile application for phone and tablet devices, and/or Kohl's retail stores, including stores in the Northern District of Texas.

**ANSWER:**  Kohl's admits that it sells patio furniture, sometimes including umbrellas, through various sales channels including "Sonoma Goods for Life Cantilever LED Solar Umbrella."  Kohl's denies that it currently sells the product "Sonoma Outdoors Crank & Tilt Solar LED Patio Umbrella," though Kohl's admits that it has sold such a product in the past.  Kohl's

denies that it infringes the Asserted Patents and denies the remaining allegations contained in Paragraph 31.

**COMPLAINT ¶ 32:**   Among the Accused Umbrellas that Kohl's uses, offers for sale, sells, and/or imports are, without limitation, the "Sonoma Goods for Life Cantilever LED Solar Umbrella" (including any and all, current and prior, reasonably similar solar-powered umbrellas having the same or equivalent functions and features and/or that are or were named or identified as "Sonoma Outdoors 10.5 ft. Offset Umbrella," "Sonoma Outdoors Crank and Tilt Cantilever Umbrella," "Sonoma Outdoors Cantilever Umbrella," "Solar Offset Umbrella"; SKU #61024125, SKU #94737312, SKU #91394591, SKU #93336538, Item UPC No. 400947373128, Style #YJAF-016-SL, #YJAF-016-SLE, #YJAF-016-SL-BN, YJAF-016-SL-BNE, YJAF-016-SL-RD-14E). Upon information and belief, this umbrella is supplied by Yotrio Corporation. This umbrella is pictured and described on Kohl's online store as shown in Figures 1, 2, and 3 which follow:



**Figure 1 – "Sonoma Goods for Life Cantilever LED Solar Umbrella" at**
**http://www.kohls.com/product/prd-2322690/sonoma-outdoors-cantilever-led-solar-umbrella.jsp(accessed 4/2/16)**



**Figure 2 – "Sonoma Goods for Life Cantilever LED Solar Umbrella" at http://www.kohls.com/product/prd-2322690/sonoma-outdoors-cantilever-led-solar-umbrella.jsp (accessed 4/2/16)**



**Figure 3 – "Sonoma Goods for Life Cantilever LED Solar Umbrella" at Kohl's iPhone app (accessed 4/4/16)**

**<u>ANSWER</u>:** Kohl's admits that it sells patio furniture, sometimes including umbrellas, through various sales channels including "Sonoma Goods for Life Cantilever LED Solar Umbrella," and that Yotrio Corporation supplies the "Sonoma Goods for Life Cantilever LED Solar Umbrella" to Kohl's. Kohl's denies that it currently sells the product "Sonoma Outdoors Crank & Tilt Solar LED Patio Umbrella," though Kohl's admits that it has sold such a product in the past. Kohl's further states that the included photos appear to be accurate, but Kohl's is without sufficient information to admit or deny them as a matter of pleading. Kohl's denies that it infringes the Asserted Patents and denies the remaining allegations contained in Paragraph 32.

**<u>COMPLAINT ¶ 33</u>:** The "Sonoma Goods for Life Cantilever LED Solar Umbrella" consists of at least an umbrella canopy with multiple rib members, umbrella pole, crank system, umbrella base, solar rechargeable power unit, and LED (light emitting diodes) lighting system.

Specifically, the umbrella has the following:

a.    An umbrella canopy that has at least a fabric canopy material and multiple rib members that extend radially. The umbrella canopy is connected to the umbrella pole via a hinge. Each rib member has a recessed channel running along its length through which runs the electrical wires leading to and from the LED lights.

b.    An umbrella pole that is connected to the umbrella base. The umbrella base is a support structure for the umbrella pole.

c.    A crank system that comprises a crank housing and a crank. The crank housing is coupled to the umbrella pole. The crank is attached to and external to the crank housing. Turning the crank will open and close the umbrella canopy.

d.    A solar rechargeable power unit (also referred to as a "Solar Energy Receiver") that collects solar energy, converts the solar energy to electrical energy, stores the electrical energy via a rechargeable electrical power system, and transmits power to the umbrella's lighting system. The power unit has a discus-shaped housing with a rounded top. It is located above the umbrella canopy and above the umbrella pole. The power unit is detachable from the pole. The power unit has at least a solar cell, rechargeable batteries, a circuit board, and related electrical wiring. The power unit has an upper portion housing a solar energy system and a lower portion housing a rechargeable electrical power system.  The upper portion of the power unit contains a solar cell that collects and converts solar energy into electrical energy. The lower portion of the power unit contains a rechargeable electrical power system consisting of rechargeable batteries, circuit board, and related electrical wiring. The solar cell is electrically connected via wires to the rechargeable electrical power system such that solar energy collected and converted into electrical energy recharges the rechargeable electrical power system. The lower portion of the power unit also has a plug hole

16

whereby, when an electrical plug is inserted, power is transmitted from the power unit to the LED lights in the lighting system.

e.    A lighting system with 32 LED lights that are electrically connected to the power unit and mounted on each of the rib members of the umbrella canopy. Each LED light has a smooth translucent cover and is partially recessed within the corresponding rib member. The electrical wires leading to and from the LED lights are fully recessed within each corresponding rib member. The LED lights are electrically connected to the rechargeable electrical power system of the power unit.

**ANSWER:**   Kohl's objects to this paragraph on the bases that it prematurely seeks noninfringement contentions from Kohl's, particularly because LakeSouth has not yet served its preliminary infringement contentions; that it uses patent claim terms that may require construction by the Court; and that it prematurely seeks technical expert opinion regarding whether patent claim elements exist in the accused products.  *See, e.g., Cummins-Allison Corp. v. SBM Co.*, No. 9:07-cv-196, 2009 U.S. Dist. LEXIS 22100 at *4–5 (E.D. Tex. Mar. 19, 2009); *Wis. Alumni Research Found. v. Apple, Inc.*, No. 14-cv-062-WMC, 2015 U.S. Dist. LEXIS 129931 at *35–36 (W.D. Wis. Sept. 28, 2015); *Cooper Notification, Inc. v. Twitter, Inc.*, 867 F. Supp. 2d 485, 498–99 (D. Del. 2012); *Automated Merch. Sys. Inc. v. Crane Co.*, No. 3:03-cv-88, 2011 U.S. Dist. LEXIS 72222 at *15 (N.D.W. Va. July 6, 2011).  Kohl's denies that it infringes any Asserted Patent and denies the remainder of Paragraph 33.

**COMPLAINT ¶ 34:**  Among the Accused Kohl's Umbrellas that Kohl's uses, offers for sale, sells, and/or imports are, without limitation, the "Sonoma Outdoors Crank & Tilt Solar LED Patio Umbrella" (including any and all, current and prior, reasonably similar solar-powered umbrellas having the same or equivalent functions and features and/or that are or were named or

identified as "SKU #93352333, Item UPC No. 400933523339, Style No. TJAUL-009P12-FGE/FGE/RDE/CSE). This umbrella is described in Figure 4 which follows:



**Figure 4 – "Sonoma Outdoors Crank & Tilt Solar LED Patio Umbrella"**

**ANSWER:** Kohl's denies that it currently sells the product "Sonoma Outdoors Crank & Tilt Solar LED Patio Umbrella," though Kohl's admits that it has sold such a product in the past. Kohl's denies that it infringes the Asserted Patents and is without sufficient information to admit or deny the remaining allegations contained in Paragraph 34 and therefore denies them.

**COMPLAINT ¶ 35:** The "Sonoma Outdoors Crank & Tilt Solar LED Patio Umbrella" consists of at least an umbrella canopy with multiple rib members, umbrella pole, crank system,

solar rechargeable power unit, and LED (light emitting diodes) lighting system. Specifically, the umbrella has the following:

a.      An umbrella canopy that has at least a fabric canopy material and multiple rib members that extend radially. The umbrella canopy is connected to the umbrella pole via a hinge. Each rib member has a recessed channel running along its length through which runs the electrical wires leading to and from the LED lights.

b.      An umbrella pole that is intended to be used with a base support that acts a support structure for the pole, including but not limited to a table, the ground, or other support structure adapted to receive the pole.

c.      A crank system that comprises a crank housing and a crank. The crank housing is coupled to the umbrella pole. The crank is attached to and external to the crank housing. Turning the crank will open and close the umbrella canopy.

d.      A solar rechargeable power unit that collects solar energy, converts the solar energy to electrical energy, stores the electrical energy via a rechargeable electrical power system, and transmits power to the umbrella's lighting system. The power unit has a discus-shaped housing. It is located above the umbrella canopy and above the umbrella pole. The power unit is detachable from the pole. The power unit has at least a solar cell, rechargeable batteries, a circuit board, and related electrical wiring. The power unit has an upper portion housing a solar energy system and a lower portion housing a rechargeable electrical power system. The upper portion of the power unit contains a solar cell that collects and converts solar energy into electrical energy. The lower portion of the power unit contains a rechargeable electrical power system consisting of rechargeable batteries, circuit board, and related electrical wiring. The solar cell is electrically connected via wires to the rechargeable electrical power system such that solar energy collected and converted

19

into electrical energy recharges the rechargeable electrical power system. The lower portion of the power unit also has a power wire jack whereby, when a power wire is inserted, power is transmitted from the power unit to the LED lights mounted on the rib members.

e.    A lighting system with multiple LED lights that are electrically connected to the power unit and mounted on each of the rib members of the umbrella canopy. Each LED light that is mounted on a rib member has a smooth translucent cover and is partially recessed within the corresponding rib member. The electrical wires leading to and from the LED lights are fully recessed within each corresponding rib member. The LED lights are electrically connected to the rechargeable electrical power system of the power unit.

**ANSWER:**   Kohl's objects to this paragraph on the bases that it prematurely seeks noninfringement contentions from Kohl's, particularly because LakeSouth has not yet served its preliminary infringement contentions; that it uses patent claim terms that may require construction by the Court; and that it prematurely seeks technical expert opinion regarding whether patent claim elements exist in the accused products.  *See, e.g.*, *Cummins-Allison Corp. v. SBM Co.*, No. 9:07-cv-196, 2009 U.S. Dist. LEXIS 22100 at *4–5 (E.D. Tex. Mar. 19, 2009); *Wis. Alumni Research Found. v. Apple, Inc.*, No. 14-cv-062-WMC, 2015 U.S. Dist. LEXIS 129931 at *35–36 (W.D. Wis. Sept. 28, 2015); *Cooper Notification, Inc. v. Twitter, Inc.*, 867 F. Supp. 2d 485, 498–99 (D. Del. 2012); *Automated Merch. Sys. Inc. v. Crane Co.*, No. 3:03-cv-88, 2011 U.S. Dist. LEXIS 72222 at *15 (N.D.W. Va. July 6, 2011).  Kohl's denies that it infringes any Asserted Patent and denies the remainder of Paragraph 35.

**COMPLAINT ¶ 36:**  Further discovery may reveal additional infringing products and/or models.

**ANSWER:**  Kohl's denies the allegations contained in Paragraph 36.

**COMPLAINT ¶ 37:**  Upon information and belief, the Accused Kohl's Umbrellas are offered for sale and sold within the Northern District of Texas.

**ANSWER:**  Kohl's admits that it sells patio furniture, including umbrellas, in the Northern District of Texas, but denies that it currently sells the "Sonoma Outdoors Crank & Tilt Solar LED Patio Umbrella."  Kohl's denies infringement of any Asserted Patent.

**COMPLAINT ¶ 38:**  Kohl's has infringed and continues to infringe (literally and/or under the doctrine of equivalents), directly, indirectly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of the Asserted Patents including at least Claim 2 of the '713 Patent and Claim 1 of the '781 Patent by using, importing, testing, supplying, causing to be supplied, selling, and/or offering for sale in the United States the Accused Kohl's Umbrellas.

**ANSWER:**  Kohl's denies the allegations contained in Paragraph 38.

**COMPLAINT ¶ 39:**  Kohl's customers have infringed and continue to infringe the '713 Patent and the '781 Patent by using the Accused Kohl's Umbrellas purchased from Kohl's. Through its retail stores, online store, phone and tablet applications, product manuals, and/or sales and marketing activities, Kohl's solicits, instructs, encourages, and aids and abets its customers to purchase and use the Accused Kohl's Umbrellas, including to use the Accused Kohl's Umbrellas with a base support.

**ANSWER:**  Kohl's denies the allegations contained in Paragraph 39.

**COMPLAINT ¶ 40:**  Kohl's customers infringe the '713 Patent by using certain Accused Kohl's Umbrellas (those that are not supplied with a base support) in combination with a base support including but not limited to an umbrella base, table, or the ground to support positioning the Accused Kohl's Umbrellas in an upright position. The Accused Kohl's Umbrellas constitute a

material part of the combination, and Kohl's has known and still knows its Accused Umbrellas are especially designed, made and/or adapted for use in a way that infringes one or more claims of the '713 Patent.

**ANSWER**:  Kohl's denies the allegations contained in Paragraph 40.

**COMPLAINT ¶ 41**:  Further, the Accused Kohl's Umbrellas are not staple articles or commodities of commerce suitable for substantial noninfringing uses. For example, the Accused Kohl's Umbrellas are umbrellas, designed to be used as umbrellas, and have no substantial noninfringing use as something other than an umbrella. Kohl's has not advertised, marketed, promoted, or represented the Accused Kohl's Umbrellas as having any use other than as umbrellas.

**ANSWER**:  Kohl's denies the allegations contained in Paragraph 41.

**COMPLAINT ¶ 42**:  On information and belief, Kohl's actions have been with specific intent to cause infringement or Kohl's has been willfully blind to the resulting infringement because Kohl's has had actual knowledge of the '713 Patent and/or the '781 Patent and knowledge that its acts were inducing infringement of the Asserted Patents since before the filing of this action.

**ANSWER**:  Kohl's denies the allegations contained in Paragraph 42.

**COMPLAINT ¶ 43**:  Kohl's direct and indirect infringement of the '713 Patent and the '781 Patent has been willful.

**ANSWER**:  Kohl's denies the allegations contained in Paragraph 43.

**COMPLAINT ¶ 44**:  On information and belief, Kohl's has known about World Factory, Inc. ("World Factory"), the original assignee and now a non-exclusive licensee of the Asserted Patents, since late February 2014.

**ANSWER**:  At the current time, Kohl's is without information sufficient to admit or deny

the allegations in Paragraph 44 and therefore denies them.

**COMPLAINT ¶ 45:**  In a letter dated February 21, 2014, with a subject line titled "Solar Powered Umbrellas," World Factory, through its attorney Max Ciccarelli, informed Kohl's about several patents, including the '713 Patent.

**ANSWER:**  Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's is not able to admit or deny the allegations contained in Paragraph 45.

**COMPLAINT ¶ 46:**  The February 21, 2014 letter was addressed to Kevin Mansell, who was and is Chairman, President, and Chief Executive Officer of Kohl's Corp. and Kohl's Department Stores, Inc.

**ANSWER:**  Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's is not able to admit or deny the allegations contained in Paragraph 46.

**COMPLAINT ¶ 47:**  The February 21, 2014 letter enclosed a copy of the Reexamination Certificate for U.S. Patent No. 6,612,713.

**ANSWER:**  Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's is not able to admit or deny the allegations contained in Paragraph 47.

**COMPLAINT ¶ 48:**  Kohl's received World Factory's February 21, 2014 letter.

**ANSWER:**  Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's is not able to admit or deny the allegations contained in Paragraph 48.

**COMPLAINT ¶ 49:**  Kohl's received World Factory's February 21, 2014 letter via Federal Express.

**ANSWER:**  Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's is not able to admit or deny the allegations contained in Paragraph 49.

**COMPLAINT ¶ 50:**  Kohl's received World Factory's February 21, 2014 letter no later

than March 1, 2014.

**ANSWER:**  Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's is not able to admit or deny the allegations contained in Paragraph 50.

**COMPLAINT ¶ 51:**  Before the filing of this action, Kohl's had knowledge of the contents of World Factory's February 21, 2014 letter.

**ANSWER:**  Kohl's is unable to locate the alleged February 21, 2014 letter.  At the current time, Kohl's is without information sufficient to admit or deny the allegations in Paragraph 51 and therefore denies them.

**COMPLAINT ¶ 52:**  Kohl's has known about World Factory since the date that it received World Factory's February 21, 2014 letter.

**ANSWER:**  Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's is not able to admit or deny the allegations contained in Paragraph 52.

**COMPLAINT ¶ 53:**  Mr. Mansell received World Factory's February 21, 2014 letter.

**ANSWER:**  Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's is not able to admit or deny the allegations contained in Paragraph 53.

**COMPLAINT ¶ 54:**  Mr. Mansell read World Factory's February 21, 2014 letter.

**ANSWER:**  Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's is not able to admit or deny the allegations contained in Paragraph 54.

**COMPLAINT ¶ 55:**  Before the filing of this action, Mr. Mansell had knowledge of the contents of World Factory's February 21, 2014 letter.

**ANSWER:**  Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's is unable to admit or deny the allegations in Paragraph 55.

**COMPLAINT ¶ 56:**  Mr. Mansell received World Factory's February 21, 2014 letter no

later than March 1, 2014.

**ANSWER:** Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's is not able to admit or deny the allegations contained in Paragraph 56.

**COMPLAINT ¶ 57:** Kohl's has known about the '713 Patent since the date that it received World Factory's February 21, 2014 letter.

**ANSWER:** Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's denies the allegations contained in Paragraph 57.

**COMPLAINT ¶ 58:** Mr. Mansell has known about the '713 Patent since the date that he received World Factory's February 21, 2014 letter.

**ANSWER:** Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's denies the allegations contained in Paragraph 58.

**COMPLAINT ¶ 59:** In the February 21, 2014 letter, World Factory informed Kohl's and Mr. Mansell that the U.S. Patent Office issued a Reexamination Certificate for U.S. Patent 6,612,713 on September 23, 2013.

**ANSWER:** Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's is not able to admit or deny the allegations contained in Paragraph 59.

**COMPLAINT ¶ 60:** In the February 21, 2014 letter, World Factory informed Kohl's and Mr. Mansell that World Factory's patent portfolio provided broad and strong protection in the field of solar powered umbrellas and that there were additional pending applications.

**ANSWER:** Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's is not able to admit or deny the allegations contained in Paragraph 60.

**COMPLAINT ¶ 61:** In the February 21, 2014 letter, World Factory informed Kohl's and Mr. Mansell that World Factory was manufacturing solar lighted umbrellas for retailers in the

United States.

**ANSWER:**  Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's is not able to admit or deny the allegations contained in Paragraph 61.

**COMPLAINT ¶ 62:**  In the February 21, 2014 letter, World Factory informed Kohl's and Mr. Mansell that World Factory was interested in partnering with select manufacturers, importers, and retailers either by providing complete solar powered umbrellas or by selectively licensing its technology.

**ANSWER:**  Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's is not able to admit or deny the allegations contained in Paragraph 62.

**COMPLAINT ¶ 63:**  In the February 21, 2014 letter, World Factory informed Kohl's and Mr. Mansell that if Kohl's was interested in purchasing solar powered umbrellas from World Factory, then Kohl's should contact John S. Kuelbs at World Factory. Mr. Kuelbs' contact information was provided in the letter.

**ANSWER:**  Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's is not able to admit or deny the allegations contained in Paragraph 63.

**COMPLAINT ¶ 64:**  In the February 21, 2014 letter, World Factory informed Kohl's and Mr. Mansell that if Kohl's was interested in licensing the World Factory patent portfolio, then Kohl's should contact World Factory's attorney and author of the letter, Max Ciccarelli. Mr. Ciccarelli's contact information was provided in the letter.

**ANSWER:**  Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's is not able to admit or deny the allegations contained in Paragraph 64.

**COMPLAINT ¶ 65:**  After receiving the February 21, 2014 letter from World Factory, after learning of the '713 Patent, after receiving a copy of the Reexamination Certificate for the

'713 Patent, after learning that World Factory was manufacturing solar lighted umbrellas, after learning that World Factory was willing to discuss selling solar powered umbrellas to Kohl's, and after learning that World Factory was willing to discuss licensing to Kohl's the World Factory patent portfolio, which included the '713 Patent, Kohl's used, sold, offered to sell, and/or imported the Accused Kohl's Umbrellas, which were supplied by vendors other than World Factory.

**ANSWER:**  Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's denies the allegations contained in Paragraph 65.

**COMPLAINT ¶ 66:**  After receiving the February 21, 2014 letter from World Factory, Kohl's chose not to use World Factory as a vendor of solar-powered umbrellas.

**ANSWER:**  Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's denies the allegations contained in Paragraph 66.

**COMPLAINT ¶ 67:**  After receiving the February 21, 2014 letter from World Factory, Kohl's has not obtained a patent license to the '713 Patent or the '781 Patent from World Factory or from LakeSouth, the current owner of the Asserted Patents.

**ANSWER:** Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's denies the allegations contained in Paragraph 67.

**COMPLAINT ¶ 68:**  Kohl's did not respond to World Factory's February 21, 2014 letter.

**ANSWER:**  Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's denies the allegations contained in Paragraph 68.

**COMPLAINT ¶ 69:**  Kohl's ignored World Factory's February 21, 2014 letter.

**ANSWER:**  Kohl's denies the allegations contained in Paragraph 69.

**COMPLAINT ¶ 70:**  Mr. Mansell did not respond to World Factory's February 21, 2014 letter.

**ANSWER:**  Because Kohl's has been unable to locate the alleged February 21, 2014 letter, Kohl's is not able to admit or deny the allegations contained in Paragraph 70.  Kohl's is not currently aware of any response to the alleged February 21, 2014 letter.

**COMPLAINT ¶ 71:**  Mr. Mansell ignored World Factory's February 21, 2014 letter.

**ANSWER:**  Kohl's denies the allegations contained in Paragraph 71.

**COMPLAINT ¶ 72:**  Kohl's had knowledge of the '713 Patent before the filing of this action.

**ANSWER:**  Kohl's denies the allegations contained in Paragraph 72.

**COMPLAINT ¶ 73:**  Kohl's had knowledge of the '781 Patent before the filing of this action.

**ANSWER:**  Kohl's denies the allegations contained in Paragraph 73.

**COMPLAINT ¶ 74:**  Despite its knowledge of the '713 Patent and the '781 Patent, Kohl's has used, sold, offered for sale, and/or imported into the United States products covered by one or more claims of the Asserted Patents, including the Accused Kohl's Umbrellas. Kohl's infringement of the Asserted Patents has been willful and intentional because it has continued its acts of infringement with knowledge of the Asserted Patents and despite the likelihood that its actions constituted infringement of a valid patent.

**ANSWER:**  Kohl's denies the allegations contained in Paragraph 74.

**COMPLAINT ¶ 75:**  LakeSouth has been and continues to be damaged as a result of Kohl's infringing conduct. Kohl's is therefore liable to LakeSouth in an amount that adequately compensates LakeSouth for Kohl's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**ANSWER:**  Kohl's denies the allegations contained in Paragraph 75.

**COMPLAINT ¶ 76**: Kohl's failed to obtain permission from LakeSouth to use, make, offer to sell, sell, or import products incorporating the inventions claimed in the Asserted Patents.

**ANSWER**: Kohl's denies the allegations contained in Paragraph 76.

**COMPLAINT ¶ 77**: For each count of infringement listed below, LakeSouth incorporates and realleges the allegations contained in the preceding paragraphs above including these General Allegations as if fully set forth in each count of infringement.

**ANSWER**: For each response below, Kohl's incorporates the information and statements contained in its preceding responses above as if fully set forth.

### Home Depot

**COMPLAINT ¶ 78**: Upon information and belief, Home Depot purchases various patio and outdoor solar-powered offset umbrellas that it uses, offers to sell, sells, distributes, and/or imports in the United States. Among these solar-powered offset umbrellas are umbrellas marketed under the "Hampton Bay" brand name. "Hampton Bay" is a Home Depot brand.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 78 of the Complaint and therefore denies them.

**COMPLAINT ¶ 79**: Home Depot uses, has used, offers to sell, has offered to sell, sells, has sold, imports, and/or has imported solar-powered offset umbrellas that include lights and a solar panel. These solar-powered offset umbrellas infringe one or more claims of the Asserted Patents and include without limitation the "Hampton Bay 11 ft. Offset LED Patio Umbrella in Tan" (Model #YJAF052-TAN, Internet #205364010, Store SKU #1000510665); "Hampton Bay 11 ft. LED Round Offset Patio Umbrella in Red" (Model #YJAF052-RED, Internet #206186465, Item and Store SKU #1001517957); "Hampton Bay 11 ft. Offset LED Patio Umbrella in Sunbrella Sand" (Model #YJAF-052L-A, Internet #206186342); "Hampton Bay E/O 11 ft. Solar Umbrella"

(Item #948-958, Model #UXS01601C); and any and all, current and prior, reasonably similar solar-powered offset umbrellas having the same or equivalent functions and features to the extent relevant to the claims of the Asserted Patents ("the Accused Home Depot Umbrellas"). Upon information and belief, Home Depot obtains some or all of the Accused Home Depot Umbrellas from Yotrio Corporation, which has not licensed the Asserted Patents and which also supplies some or all of the Accused Kohl's Umbrellas to Kohl's.

**ANSWER:** Kohl's admits that Yotrio Corporation supplies certain umbrella products to Kohl's, but Kohl's denies that Yotrio Corporation supplies all of the "Accused Kohl's Umbrellas." Kohl's does not have sufficient information to admit or deny the remaining allegations contained in Paragraph 79 of the Complaint and therefore denies them.

**COMPLAINT ¶ 80:** The Accused Home Depot Umbrellas are marketed and sold online by Home Depot through its online store – www.homedepot.com, the Home Depot mobile application for phone and tablet devices, and/or at Home Depot retail stores, including stores in the Northern District of Texas.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 80 of the Complaint and therefore denies them.

**COMPLAINT ¶ 81:** Among the Accused Home Depot Umbrellas that Home Depot uses, offers for sale, sells, and/or imports are, without limitation, the "Hampton Bay 11 ft. Offset LED Patio Umbrella in Tan" (Model #YJAF052-TAN, Internet #205364010, Store SKU #1000510665). This umbrella is pictured and described on Home Depot's online store as shown in Figures 5 and 6 below.



**Figure 5 – "Hampton Bay 11 ft. Offset LED Patio Umbrella in Tan" at http://www.homedepot.com/p/Hampton-Bay-11-ft-Offset-LED-Patio-Umbrella-in-Tan-YJAF052-TAN/205364010**



**Figure 6 – "Hampton Bay 11 ft. Offset LED Patio Umbrella in Tan" at** http://www.homedepot.com/p/Hampton-Bay-11-ft-Offset-LED-Patio-Umbrella-in-Tan-YJAF052-TAN/205364010

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 81 of the Complaint and therefore denies them.

**COMPLAINT ¶ 82:** The "Hampton Bay 11 ft. Offset LED Patio Umbrella in Tan"

(Model #YJAF052-TAN, Internet #205364010, Store SKU #1000510665) consists of at least an umbrella canopy with multiple rib members, umbrella pole, crank system, umbrella base, solar rechargeable power unit, and LED (light emitting diodes) lighting system. Specifically, the umbrella has the following:

a.      The umbrella canopy has at least a fabric canopy material and multiple rib members

that extend radially. The umbrella canopy is connected to the umbrella pole via a hinge. Each rib member has a recessed channel running along its length through which runs the electrical wires leading to and from the LED lights.

b.      The umbrella pole is connected to the umbrella base. The umbrella base is a support structure for the umbrella pole.

c.      The crank system consists of a crank housing and a crank. The crank housing is coupled to the umbrella pole. The crank is attached to and external to the crank housing. Turning the crank will open and close the umbrella canopy.

d.      The solar rechargeable power unit (also referred to as a "solar receiver") collects solar energy, converts the solar energy to electrical energy, stores the electrical energy via a rechargeable electrical power system, and transmits power to the umbrella's lighting system. The power unit has a discus-shaped housing with a rounded top. It is located above the umbrella canopy and above the umbrella pole. The power unit is detachable from the pole. The power unit has at least a solar cell, rechargeable batteries, a circuit board, and related electrical wiring. The power unit has an upper portion housing a solar energy system and a lower portion housing a rechargeable electrical power system. The upper portion of the power unit contains a solar cell that collects and converts solar energy into electrical energy. The lower portion of the power unit contains a rechargeable electrical power system consisting of

rechargeable batteries, circuit board, and related electrical wiring. The solar cell is electrically connected via wires to the rechargeable electrical power system such that solar energy collected and converted into electrical energy recharges the rechargeable electrical power system. The lower portion of the power unit also has a plug hole whereby, when an electrical plug is inserted, power is transmitted from the power unit to the LED lights in the lighting system.

e.      The lighting system consists of 40 LED lights that are electrically connected to the power unit and mounted on each of the rib members of the umbrella canopy. Each LED light has a smooth translucent cover and is partially recessed within the corresponding rib member. The electrical wires leading to and from the LED lights are fully recessed within each corresponding rib member.   The LED lights are electrically connected to the rechargeable electrical power system of the power unit.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 82 of the Complaint and therefore denies them.

**COMPLAINT ¶ 83:** Among the Accused Home Depot Umbrellas that Home Depot uses, offers for sale, sells, and/or imports include, without limitation, the "Hampton Bay 11 ft. LED Round Offset Patio Umbrella in Red" (Model #YJAF052-RED, Internet #206186465, Item and Store SKU #1001517957). This umbrella is pictured and described on Home Depot's online store as shown in Figures 7 and 8 below.



**Figure 7 – "Hampton Bay 11 ft. LED Round Offset Patio Umbrella in Red" at http://www.homedepot.com/p/Hampton-Bay-11-ft-LED-Round-Offset-Patio-Umbrella-in-Red-YJAF052-RED/206186465**



**Figure 8 – "Hampton Bay 11 ft. LED Round Offset Patio Umbrella in Red" at http://www.homedepot.com/p/Hampton-Bay-11-ft-LED-Round-Offset-Patio-Umbrella-in-Red-YJAF052-RED/206186465**

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 83 of the Complaint and therefore denies them.

**COMPLAINT ¶ 84:** The "Hampton Bay 11 ft. LED Round Offset Patio Umbrella in Red" (Model #YJAF052-RED, Internet #206186465, Item and Store SKU #1001517957) consists

of at least an umbrella canopy with multiple rib members, umbrella pole, crank system, umbrella base, solar rechargeable power unit, and LED (light emitting diodes) lighting system. Specifically, the umbrella has the following:

a.      The umbrella canopy has at least a fabric canopy material and multiple rib members that extend radially. The umbrella canopy is connected to the umbrella pole via a hinge. Each rib member has a recessed channel running along its length through which runs the electrical wires leading to and from the LED lights.

b.      The umbrella pole is connected to the umbrella base. The umbrella base is a support structure for the umbrella pole.

c.      The crank system consists of a crank housing and a crank. The crank housing is coupled to the umbrella pole. The crank is attached to and external to the crank housing. Turning the crank will open and close the umbrella canopy.

d.      The solar rechargeable power unit (also referred to as a "solar receiver") collects solar energy, converts the solar energy to electrical energy, stores the electrical energy via a rechargeable electrical power system, and transmits power to the umbrella's lighting system. The power unit has a discus-shaped housing with a rounded top. It is located above the umbrella canopy and above the umbrella pole. The power unit is detachable from the pole. The power unit has at least a solar cell, rechargeable batteries, a circuit board, and related electrical wiring. The power unit has an upper portion housing a solar energy system and a lower portion housing a rechargeable electrical power system. The upper portion of the power unit contains a solar cell that collects and converts solar energy into electrical energy. The lower portion of the power unit contains a rechargeable electrical power system consisting of rechargeable batteries, circuit board, and related electrical wiring. The solar cell is electrically connected via wires to the rechargeable electrical

37

power system such that solar energy collected and converted into electrical energy recharges the rechargeable electrical power system. The lower portion of the power unit also has a plug hole whereby, when an electrical plug is inserted, power is transmitted from the power unit to the LED lights in the lighting system.

e.    The lighting system consists of 40 LED lights that are electrically connected to the power unit and mounted on each of the rib members of the umbrella canopy. Each LED light has a smooth translucent cover and is partially recessed within the corresponding rib member. The electrical wires leading to and from the LED lights are fully recessed within each corresponding rib member. The LED lights are electrically connected to the rechargeable electrical power system of the power unit.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 84 of the Complaint and therefore denies them.

**COMPLAINT ¶ 85:** Among the Accused Home Depot Umbrellas that Home Depot uses, offers for sale, sells, and/or imports include, without limitation, the "Hampton Bay 11 ft. Offset LED Patio Umbrella in Sunbrella Sand" (Model #YJAF-052L-A, Internet #206186342). This umbrella is pictured and described on Home Depot's online store as shown in Figures 9 and 10 below.



**Figure 9 – "Hampton Bay 11 ft. Offset LED Patio Umbrella in Sunbrella Sand" at http://www.homedepot.com/p/Hampton-Bay-11-ft-LED-Offset-Patio-Umbrella-in-Sunbrella-Sand-YJAF-052L-A/206186342**



**Figure 10 – "Hampton Bay 11 ft. Offset LED Patio Umbrella in Sunbrella Sand" at http://www.homedepot.com/p/Hampton-Bay-11-ft-LED-Offset-Patio-Umbrella-in-Sunbrella-Sand-YJAF-052L-A/206186342**

<u>**ANSWER:**</u> Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 85 of the Complaint and therefore denies them.

<u>**COMPLAINT ¶ 86:**</u> The "Hampton Bay 11ft. Offset LED Patio Umbrella in Sunbrella Sand" (Model #YJAF-052L-A, Internet #206186342) consists of at least an umbrella canopy with

multiple rib members, umbrella pole, crank system, umbrella base, solar rechargeable power unit, and LED (light emitting diodes) lighting system. Specifically, the umbrella has the following:

a.      The umbrella canopy has at least a fabric canopy material and multiple rib members that extend radially. The umbrella canopy is connected to the umbrella pole via a hinge. Each rib member has a recessed channel running along its length through which runs the electrical wires leading to and from the LED lights.

b.      The umbrella pole is connected to the umbrella base. The umbrella base is a support structure for the umbrella pole.

c.      The crank system consists of a crank housing and a crank. The crank housing is coupled to the umbrella pole. The crank is attached to and external to the crank housing. Turning the crank will open and close the umbrella canopy.

d.      The solar rechargeable power unit (also referred to as a "solar receiver") collects solar energy, converts the solar energy to electrical energy, stores the electrical energy via a rechargeable electrical power system, and transmits power to the umbrella's lighting system. The power unit has a discus-shaped housing with a rounded top. It is located above the umbrella canopy and above the umbrella pole. The power unit is detachable from the pole. The power unit has at least a solar cell, rechargeable batteries, a circuit board, and related electrical wiring. The power unit has an upper portion housing a solar energy system and a lower portion housing a rechargeable electrical power system. The upper portion of the power unit contains a solar cell that collects and converts solar energy into electrical energy. The lower portion of the power unit contains a rechargeable electrical power system consisting of rechargeable batteries, circuit board, and related electrical wiring. The solar cell is electrically connected via wires to the rechargeable electrical power system such that solar energy collected and converted into electrical energy recharges the

41

rechargeable electrical power system. The lower portion of the power unit also has a plug hole whereby, when an electrical plug is inserted, power is transmitted from the power unit to the LED lights in the lighting system.

e.      The lighting system consists of 40 LED lights that are electrically connected to the power unit and mounted on each of the rib members of the umbrella canopy. Each LED light has a smooth translucent cover and is partially recessed within the corresponding rib member. The electrical wires leading to and from the LED lights are fully recessed within each corresponding rib member. The LED lights are electrically connected to the rechargeable electrical power system of the power unit.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 86 of the Complaint and therefore denies them.

**COMPLAINT ¶ 87:** Among the Accused Home Depot Umbrellas that Home Depot uses, sells, offers for sale, and/or imports include, without limitation, the "Hampton Bay E/O 11 ft. Solar Umbrella" (Item #948-958, Model #UXS01601C). Upon information and belief, this umbrella is supplied by Yotrio Corporation. This umbrella is described in Figure 11 below.



**Figure 11 – "Hampton Bay E/O 11 ft. Solar Umbrella"**
**(Item #948-958, Model #UXS01601C) Use and Care Guide.**

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 87 of the Complaint and therefore denies them.

**COMPLAINT ¶ 88:** The "Hampton Bay E/O 11 ft. Solar Umbrella" (Item #948-958, Model #UXS01601C) consists of at least an umbrella canopy with multiple rib members, umbrella pole, crank system, umbrella base, solar rechargeable power unit, and LED (light emitting diodes)

43

lighting system. Specifically, the umbrella has the following:

a.      The umbrella canopy has at least a fabric canopy material and multiple rib members that extend radially. The umbrella canopy is connected to the umbrella pole via a hinge. Each rib member has a recessed channel running along its length through which runs the electrical wires leading to and from the LED lights.

b.      The umbrella pole is connected to the umbrella base. The umbrella base is a support structure for the umbrella pole.

c.      The crank system consists of a crank housing and a crank. The crank housing is coupled to the umbrella pole. The crank is attached to and external to the crank housing. Turning the crank will open and close the umbrella canopy.

d.      The solar rechargeable power unit (also referred to as a "solar receiver") collects solar energy, converts the solar energy to electrical energy, stores the electrical energy via a rechargeable electrical power system, and transmits power to the umbrella's lighting system. The power unit has a discus-shaped housing with a rounded top. It is located above the umbrella canopy and above the umbrella pole. The power unit is detachable from the pole. The power unit has at least a solar cell, rechargeable batteries, a circuit board, and related electrical wiring. The power unit has an upper portion housing a solar energy system and a lower portion housing a rechargeable electrical power system. The upper portion of the power unit contains a solar cell that collects and converts solar energy into electrical energy. The lower portion of the power unit contains a rechargeable electrical power system consisting of rechargeable batteries, circuit board, and related electrical wiring. The solar cell is electrically connected via wires to the rechargeable electrical power system such that solar energy collected and converted into electrical energy recharges the rechargeable electrical power system. The lower portion of the power unit also has a plug hole

whereby, when an electrical plug is inserted, power is transmitted from the power unit to the LED lights in the lighting system.

e.      The lighting system consists of 40 LED lights that are electrically connected to the power unit and mounted on each of the rib members of the umbrella canopy. Each LED light has a smooth translucent cover and is partially recessed within the corresponding rib member. The electrical wires leading to and from the LED lights are fully recessed within each corresponding rib member. The LED lights are electrically connected to the rechargeable electrical power system of the power unit.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 88 of the Complaint and therefore denies them.

**COMPLAINT ¶ 89:** Further discovery may reveal additional infringing products and/or models.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 89 of the Complaint and therefore denies them.

**COMPLAINT ¶ 90:** Upon information and belief, the Accused Home Depot Umbrellas are currently or have been offered for sale and sold within the Northern District of Texas.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 90 of the Complaint and therefore denies them.

**COMPLAINT ¶ 91:** Home Depot has infringed and continues to infringe (literally and/or under the doctrine of equivalents), directly and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of the Asserted Patents including at least Claim 2 of the '713 Patent and Claim 1 of the '781 Patent by using, importing, testing, supplying, causing to be supplied, selling, and/or offering for sale in the United States the Accused Home Depot Umbrellas.

45

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 91 of the Complaint and therefore denies them.

**COMPLAINT ¶ 92:**  Home Depot's customers have infringed and continue to infringe the '713 Patent and the '781 Patent by using the Accused Home Depot Umbrellas purchased from Home Depot. Through its retail stores, online store, phone and tablet applications, product manuals, and sale and marketing activities, Home Depot solicits, instructs, and encourages its customers to purchase and use the Accused Umbrellas.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 92 of the Complaint and therefore denies them.

**COMPLAINT  ¶  93:**  Home Depot has been aware that its actions would cause infringement of the '713 Patent and the '781 Patent and acted with intent to encourage direct infringement of the Asserted Patents.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 93 of the Complaint and therefore denies them.

**COMPLAINT ¶ 94:** Home Depot's infringement of the '713 Patent and the '781 Patent has been willful. Upon information and belief, Home Depot has known of the '713 Patent since at least 2010 and the '781 Patent since before the filing of this action. LakeSouth and/or World Factory, Inc. ("World Factory"), a non-exclusive licensee of the Asserted Patents, have engaged in negotiations and correspondence with Home Depot such that Home Depot had or should have had knowledge of one or more of the Asserted Patents before the filing of this action. For example, Home Depot's pre-suit knowledge of one or more of the Asserted Patents arises from at least its knowledge that it has obtained from licensed supplier Zhejiang Nengfu and then has used, sold, or offered for sale non-offset solar-powered market or round umbrellas such as the "9 ft Umbrella

with LED Lights," which are marked with at least the '713 Patent. Despite this knowledge, Home Depot continued to use, sell, and offer for sale unlicensed solar-powered umbrellas, specifically the Accused Home Depot Umbrellas, from unlicensed suppliers such as Yotrio Corporation. Home Depot's infringement of the Asserted Patents has been willful and intentional because it has continued its acts of infringement with knowledge of the Asserted Patents and despite the likelihood that its actions constituted infringement of a valid patent.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 94 of the Complaint and therefore denies them.

**COMPLAINT ¶ 95:**  LakeSouth has been and continues to be damaged as a result of Home Depot's infringing conduct. Home Depot is therefore liable to LakeSouth in an amount that adequately compensates LakeSouth for Home Depot infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 95 of the Complaint and therefore denies them.

**COMPLAINT ¶ 96:**  Home Depot will continue to infringe the Asserted Patents unless enjoined by this Court.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 96 of the Complaint and therefore denies them.

**COMPLAINT ¶ 97:**  Home Depot failed to obtain permission from LakeSouth to use, offer to sell, sell, or import products incorporating the inventions claimed in the Asserted Patents.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 97 of the Complaint and therefore denies them.

**COMPLAINT ¶ 98:**  For each count of infringement listed below, LakeSouth incorporates and realleges the allegations contained in the preceding paragraphs above including these General Allegations as if fully set forth in each count of infringement.

**ANSWER:**  For each response below, Kohl's incorporates the information and statements contained in its preceding responses above as if fully set forth.

### Count I – INFRINGEMENT OF THE '781 PATENT BY KOHL'S

**COMPLAINT ¶ 99:**  Kohl's has been and is now directly infringing the '781 Patent in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States products that are covered by at least Claim 1 of the '781 Patent, including but not limited to the Accused Kohl's Umbrellas. Kohl's direct infringement of the '781 Patent is willful.

**ANSWER:**  Kohl's denies the allegations contained in Paragraph 99.

**COMPLAINT ¶ 100:**  In addition, Kohl's has been and is now indirectly infringing the '781 Patent in violation of 35 U.S.C. § 271(b) by actively inducing its suppliers such as Yotrio Corporation and its customers to directly infringe the '781 Patent. For example, to satisfy its demand for solar-powered umbrellas among other reasons, Kohl's encourages its unlicensed suppliers such as Yotrio Corporation to import, make, sell, and/or offer to sell the Accused Kohl's Umbrellas. As another example, Kohl's sells the Accused Kohl's Umbrellas to its customers for the express purpose of having its customers use the Accused Kohl's Umbrellas. Through its retail stores, online store, phone and tablet applications, product manuals, and/or sales and marketing activities, Kohl's solicits, instructs, aids and abets, and encourages its customers to purchase and use the Accused Kohl's Umbrellas. Kohl's inducement of infringement of the '781 Patent is willful.

**ANSWER:**  Kohl's denies the allegations contained in Paragraph 100.

**COMPLAINT ¶ 101:**  On information and belief, Kohl's has known about the '781 Patent since before the filing of this action. Kohl's acted despite the likelihood that its actions constituted infringement of a valid patent.   Kohl's was aware that its actions would cause infringement of the '781 Patent and acted with intent to encourage direct infringement of the '781 Patent.

**ANSWER:**  Kohl's denies the allegations contained in Paragraph 101.

**COMPLAINT ¶ 102:**  As a result of Kohl's infringement of the '781 Patent, LakeSouth has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

**ANSWER:**  Kohl's denies the allegations contained in Paragraph 102.

### Count II – INFRINGEMENT OF THE '713 PATENT BY KOHL'S

**COMPLAINT ¶ 103:**  Kohl's has been and is now directly infringing the '713 Patent in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States products that are covered by at least Claim 2 of the '713 Patent, including but not limited to certain Accused Umbrellas such as the "Sonoma Goods for Life Cantilever LED Solar Umbrella" (including any and all, current and prior, reasonably similar solar-powered umbrellas having the same or equivalent functions and features and/or that are or were named or identified as "Sonoma Outdoors 10.5 ft. Offset Umbrella," "Sonoma Outdoors Crank and Tilt Cantilever Umbrella," "Sonoma Outdoors Cantilever Umbrella"; SKU #61024125, SKU #94737312, Style #YJAF-016-SL-BN, YJAF-016-SL-BNE, YJAF-016-SL-RD-14E).   Kohl's direct infringement of the '713 Patent is willful.

**ANSWER:**  Kohl's denies the allegations contained in Paragraph 103.

**COMPLAINT ¶ 104:**  Kohl's has been and is now indirectly infringing the '713 Patent in violation of 35 U.S.C. § 271(b) by actively inducing its unlicensed suppliers such as Yotrio

Corporation and its customers to directly infringe the '713 Patent including at least Claim 2 of the '713 Patent. For example, to satisfy its demand for solar-powered umbrellas among other reasons, Kohl's encourages its unlicensed suppliers such as Yotrio Corporation to import, make, sell, and/or offer to sell the Accused Kohl's Umbrellas. As another example, Kohl's sells the Accused Kohl's Umbrellas to its customers for the express purpose of having its customers use the Accused Umbrellas. Through its retail stores, online store, phone and tablet applications, product manuals, and/or sales and marketing activities, Kohl's solicits, instructs, aids and abets, and encourages its customers to purchase and use the Accused Umbrellas, including to use the Accused Kohl's Umbrellas with a base support and/or umbrella base. Kohl's inducement of infringement of the '713 Patent is willful.

**ANSWER:**  Kohl's denies the allegations contained in Paragraph 104.

**COMPLAINT ¶ 105:**  In addition to and/or in the alternative, Kohl's has been and is now contributorily infringing the '713 Patent, including at least Claim 2 of the '713 Patent, in violation of 35 U.S.C. § 271(c) by offering to sell, selling, and/or  importing into the United States the Accused Umbrellas, which are a component of a patented machine, manufacture, combination, or composition, the Accused Kohl's Umbrellas constituting a material part of the invention, and Kohl's knowing the same to be especially made or especially adapted for use in a manner that infringes one or more claims of the '713 Patent.  Further, the Accused Umbrellas are not a staple article or commodity of commerce suitable for substantial non-infringing use. Kohl's contributory infringement of the '713 Patent is willful.

**ANSWER:**  Kohl's denies the allegations contained in Paragraph 105.

**COMPLAINT ¶ 106:**  On information and belief, Kohl's has known about the '713 Patent since late February 2014. Kohl's acted despite the likelihood that its actions constituted

infringement of a valid patent. Kohl's was aware that its actions would cause infringement of the '713 Patent and acted with intent to encourage direct infringement of the '713 Patent.

**ANSWER:**  Kohl's denies the allegations contained in Paragraph 106.

**COMPLAINT ¶ 107:**  As a result of Kohl's infringement of the '713 Patent, LakeSouth has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

**ANSWER:**  Kohl's denies the allegations contained in Paragraph 107.

### Count III – INFRINGEMENT OF THE '781 PATENT BY HOME DEPOT

**COMPLAINT ¶ 108:**  Home Depot has been and is now directly infringing the '781 Patent in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States solar-powered offset umbrellas that are covered by at least Claim 1 of the '781 Patent, including but not limited to the Accused Home Depot Umbrellas.

**ANSWER:**  Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 108 of the Complaint and therefore denies them.

**COMPLAINT ¶ 109:**  In addition, Home Depot has been and is now indirectly infringing the '781 Patent in violation of 35 U.S.C. § 271(b) by inducing its unlicensed suppliers such as Yotrio Corporation and its customers to directly infringe the '781 Patent. For example, to satisfy its demand for solar-powered offset umbrellas among other reasons, Home Depot encourages its unlicensed suppliers such as Yotrio Corporation to import, make, sell, and/or offer to sell the Accused Home Depot Umbrellas. As another example, Home Depot sells the Accused Home Depot Umbrellas to its customers for the express purpose of having its customers use the Accused Home Depot Umbrellas. Through its retail stores, online store, phone and tablet applications, product manuals, and/or sales and marketing activities, Home Depot solicits, instructs, and

encourages its customers to purchase and use the Accused Home Depot Umbrellas.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 109 of the Complaint and therefore denies them.

**COMPLAINT ¶ 110:**   Upon information and belief, Home Depot has known about the '781 Patent since before the filing of this action. Home Depot acted despite the likelihood that its actions constituted infringement of a valid patent. Home Depot was aware that its actions would cause infringement of the '781 Patent and acted with intent to encourage direct infringement of the '781 Patent.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 110 of the Complaint and therefore denies them.

**COMPLAINT ¶ 111:**   As a result of Home Depot's infringement of the '781 Patent, LakeSouth has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 111 of the Complaint and therefore denies them.

### Count IV – INFRINGEMENT OF THE '713 PATENT BY HOME DEPOT

**COMPLAINT ¶ 112:**   Home Depot has been and is now directly infringing the '713 Patent in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States solar-powered offset umbrellas that are covered by at least Claim 2 of the '713 Patent, including but not limited to the Accused Home Depot Umbrellas.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 112 of the Complaint and therefore denies them.

**COMPLAINT ¶ 113:**   In addition, Home Depot has been and is now indirectly infringing

the '713 Patent in violation of 35 U.S.C. § 271(b) by actively inducing its unlicensed suppliers such as Yotrio Corporation and its customers to directly infringe the '713 Patent including at least Claim 2 of the '713 Patent. For example, to satisfy its demand for solar-powered offset umbrellas among other reasons, Home Depot encourages its unlicensed suppliers such as Yotrio Corporation to import, make, sell, and/or offer to sell the Accused Home Depot Umbrellas. As another example, Home Depot sells the Accused Home Depot Umbrellas to its customers for the express purpose of having its customers use the Accused Home Depot Umbrellas. Through its retail stores, online store, phone and tablet applications, product manuals, and/or sales and marketing activities, Home Depot solicits, instructs, and encourages its customers to purchase and use the Accused Umbrellas, including to use the Accused Home Depot Umbrellas with an umbrella base.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 113 of the Complaint and therefore denies them.

**COMPLAINT ¶ 114:** Upon information and belief, Home Depot has known about the '713 Patent since at least 2010. Home Depot acted despite the likelihood that its actions constituted infringement of a valid patent. Home Depot was aware that its actions would cause infringement of the '713 Patent and acted with intent to encourage direct infringement of the '713 Patent.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 114 of the Complaint and therefore denies them.

**COMPLAINT ¶ 115:** As a result of Home Depot's infringement of the '713 Patent, LakeSouth has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

**ANSWER:** Kohl's does not have sufficient information to admit or deny the allegations contained in Paragraph 115 of the Complaint and therefore denies them.

## DEMAND FOR JURY TRIAL

**COMPLAINT ¶ 116:** Pursuant to Rule 38 of the Federal Rules of Civil Procedure, LakeSouth demands a trial by jury on all issues triable of right by a jury.

**ANSWER:** Paragraph 116 is a legal request and requires no admission or denial. Kohl's separately requests a trial by jury on all issues triable of right by a jury.

## PRAYER FOR RELIEF

**ANSWER TO PRAYER OF LAKESOUTH (COMPLAINT ¶¶ 117–132):** Regarding Paragraphs 118 through 124, Kohl's denies that LakeSouth is entitled to any of the requested relief. Regarding Paragraphs 125 through 131, Kohl's lacks knowledge sufficient to either admit or deny the allegations and therefore denies them. Regarding Paragraphs 117 and 132, Kohl's denies that LakeSouth is entitled to any relief with respect to Kohl's, and Kohl's lacks knowledge sufficient to either admit or deny the remaining allegations of Paragraphs 117 and 132 and therefore denies them. Kohl's further requests judgment in Kohl's' favor on all claims and causes of action in this suit.

## SEPARATE DEFENSES

133.    Without admitting any of LakeSouth's allegations or conceding the burden of proof found to be an element of any of LakeSouth's claims, rather than an element of an affirmative defense as a matter of law, Kohl's asserts the following separate defenses to LakeSouth's Complaint:

### FIRST SEPARATE DEFENSE

### (Failure to State a Claim)

134.    The allegations and claims in the Complaint, in whole or in part, fail to state a claim upon which relief may be granted.

## SECOND SEPARATE DEFENSE

### (Non-infringement)

135.     Kohl's does not directly or indirectly infringe, and has not directly or indirectly infringed, any valid claim of the Asserted Patents, either literally or under the doctrine of equivalents.

## THIRD SEPARATE DEFENSE

### (Invalidity)

136.     On information and belief, the asserted claims of the '713 and '781 Patents are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112.

## FOURTH SEPARATE DEFENSE

### (Equitable Doctrines)

137.     Upon information and belief, LakeSouth's claims are barred, in whole or in part, under the doctrine(s) of laches, equitable estoppel, acquiescence, and/or waiver.

## FIFTH SEPARATE DEFENSE

### (Patent Marking and Notice)

138.     Upon information and belief, LakeSouth's claims are limited, in whole or in part, by failure to comply with the marking and notice requirements of 35 U.S.C. § 287.

## SIXTH SEPARATE DEFENSE

### (Prosecution History Estoppel)

139.     Upon information and belief, by reason of the proceedings in the United States Patent and Trademark Office during the prosecution of the applications of the '713 and/or '781 Patents and/or during the prosecution of the reexamination of the '713 Patent, and by reasons of

amendments, disclaimers, disavowals, admissions, representations, arguments, and/or statements made therein by or on behalf of the applicants for the Asserted Patents, LakeSouth is estopped from construing the claims of the Asserted Patents to cover and/or include any acts of Kohl's.

## SEVENTH SEPARATE DEFENSE

### (License and Patent Exhaustion)

140.     Should discovery reveal that LakeSouth has granted a license or has otherwise received payment from a licensee in a business relationship with either Kohl's or a related entity or has otherwise been paid for an accused product, Kohl's is entitled to the benefit of that license or payment under the doctrines of license and/or patent exhaustion.

## EIGHTH SEPARATE DEFENSE

### (Lack of Standing)

141.     Upon information and belief, LakeSouth may not own all right, title, and interest in one or both of the Asserted Patents and therefore may lack standing to sue Kohl's on said patents.

## NINTH SEPARATE DEFENSE

### (Intervening Rights)

142.     LakeSouth's potential damages recovery from Kohl's on the '713 Patent is limited, in whole or in part, by the statutory and equitable doctrines of intervening rights.

### OTHER DEFENSES

Kohl's reserve its rights to assert additional separate defenses, whether available now or in the future, as discovery proceeds.

### KOHL'S' PRAYER FOR RELIEF

Based on the foregoing, Defendants Kohl's Department Stores, Inc. and Kohl's Illinois,

Inc. respectively request the following relief:

1.      That LakeSouth take nothing on its Complaint;

2.      That LakeSouth's Complaint be dismissed with prejudice and that all relief

requested by LakeSouth be denied with prejudice;

3.      That the Court find this to be an exceptional case under 35 U.S.C. § 285, entitling

Kohl's to an award of its reasonable attorneys' fees;

4.      That the Court award to Kohl's its costs and expenses associated with this case;

and

5.      That the Court award to Kohl's such other relief, in law or in equity, as this Court

deems just and proper.

Dated: September 6, 2016                          Respectfully submitted,

                                                  /s/ Steven Malin
                                                  Steven Malin
                                                  Texas Bar No. 12859750
                                                  smalin@chenmalin.com
                                                  Dwayne C. Norton
                                                  Texas Bar No. 24076139
                                                  dnorton@chenmalin.com
                                                  Michael J. Fagan, Jr.
                                                  Texas Bar No. 24087490
                                                  mfagan@chenmalin.com
                                                  CHEN MALIN LLP
                                                  1700 Pacific Avenue, Suite 2400
                                                  Dallas, TX 75201
                                                  Telephone: (214) 627-9950

                                                  Counsel for Defendants
                                                  Kohl's Department Stores, Inc. and
                                                  Kohl's Illinois, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of September, 2016, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing. The Clerk of the Court will transmit a Notice of Electronic Filing to all counsel of record for LakeSouth who have consented to electronic service.

                                                  /s/ Steven Malin